* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Glenn, with modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and the Commission has jurisdiction of the parties and of the subject matter. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between the plaintiff and the defendant-employer on May 16, 2001.
3. The defendant-employer was insured by America Protection Insurance at all relevant times herein.
4. The plaintiff has been out of work at various times since May 16, 2001. She last worked in approximately June 2002, and is currently not working.
5. The plaintiff's average weekly wage at the time of the incident in question was $399.01 per week.
6. The issues to be determined from this hearing are as follows:
 a) Whether the plaintiff sustained an injury by accident while in the course and scope of her employment with the defendant-employer on May 16, 2001;
 b) If so, what benefits, if any, is she entitled to receive under the North Carolina Workers' Compensation Act;
 c) Whether the defendants denied liability for the plaintiff's knee injury without reasonable basis;
 d) Whether the plaintiff is entitled to sanctions and/or penalties against the defendants; and,
 e) Whether the plaintiff timely reported and filed this workers' compensation claim, and whether the defendants were prejudiced by the plaintiff's failure to file a claim in a timely manner and her failure to cooperate in an investigation of this claim.
7. The Pre-Trial Agreement and all stipulations that have been submitted by the parties are hereby incorporated by reference as though they were fully set out herein.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACTS
1. The plaintiff began working for the defendant-employer in 1996 as a certified nursing assistant (CNA). The defendant-employer is a staffing service that employs medical professionals for the purpose of providing primarily in-home care to patients. Plaintiff's average weekly wages at the time of her injury by accident were $399.01 per week, yielding a compensation rate of $266.01 per week.
2. On May 16, 2001, the plaintiff was involved in a motor vehicle accident while on her way to pick up food for a paraplegic patient, which was part of her job duties. While traveling on Highway 29 at approximately 55 miles an hour in the right hand lane, her vehicle was struck by another vehicle that came out of the left lane and into the plaintiff's lane. The impact caused the plaintiff's car to spin and then to hit the cement median barrier where her car came to rest. Prior to and during impact, the plaintiff attempted to control her car by tightly gripping the steering wheel and applying brakes. The plaintiff lost control of her car due to the impact of the other vehicle. She hit her head and right knee on something in the car, and immediately experienced swelling in her face and right knee. The plaintiff also sustained injuries to her chest as a result of the accident. She did not lose consciousness.
3. Emergency Medical Services arrived on the scene and recorded complaints of left side head pain. Edema to the left side upper lip was noted. EMS transported the plaintiff to Moses Cone Memorial Hospital, where she was treated for headache, trouble breathing, contusions, swelling in the left lip/chin area, and soreness on the head, face, and chest. The plaintiff was released from Moses Cone Hospital with medications and instructions to follow up with her family physician.
4. The plaintiff called her supervisor, David Popp, to report the accident within thirty minutes of the incident. She requested that he send a staff member to care for her patient. The defendants acknowledge the plaintiff's same-day notification of the accident as indicated on the Form 19 dated August 9, 2002. The defendants did not send another staff member to care for the plaintiff's patient.
5. The Full Commission finds that plaintiff's motor vehicle accident arose out her employment and in the course and scope of her employment. Plaintiff filed a Form 18 with the North Carolina Industrial Commission in June 2002. The defendants filed a Form 19 with the Industrial Commission on August 9, 2002, and denied liability for the plaintiff's claim on September 9, 2002.
6. The plaintiff also filed a claim with Nationwide Insurance, the motor vehicle insurance carrier for her vehicle, because the at-fault driver did not stop and could not be located.
7. The plaintiff sought treatment from her family physician at Eagle Family Medicine on May 17, 2001, the day after the accident. The physical examination revealed tenderness and swelling over the plaintiff's left cheek, and a contusion on the inside of her upper lip. She complained of body soreness, particularly in the shoulders and upper back. The plaintiff received a note placing her out of work from May 17 to June 6, 2001, for medical reasons.
8. The plaintiff began to experience a decrease in the size of her breast implants almost immediately after the accident. She reported her concerns to the physicians at the emergency room, where a visual inspection was performed, and no asymmetry noted.
9. The plaintiff followed up with Dr. David Bowers, a plastic surgeon, on May 31, 2001, regarding her breast implants. She reported a decrease in the size of her implants since the accident. On June 7, 2001, Dr. Bowers performed bilateral breast re-augmentation, removing Plaintiff's original breast implants and replacing them with new implants. Dr. Bowers testified that the right breast implant had a leak at the time it was removed, but the left one did not appear to have ruptured. He replaced both implants with fully filled 475 cc implants. Dr. Bowers billed and was paid by Nationwide Insurance for his work, pursuant to plaintiff's claim with Nationwide. Dr. Bowers restricted the plaintiff from work from June 7, 2001, the date of her surgery, until July 26, 2001.
10. The damage to plaintiff's breast implants were caused or aggravated by the accident. Dr. Bowers testified that the accident caused the leak he found in the plaintiff's right breast implant. He was not certain whether the accident caused the rippling in her left breast implant or whether the rippling was from normal wear and tear. However, Dr. Bowers noted that, even if there was deterioration of the implants pre-accident, the trauma to the plaintiff's chest would "most definitely" have accelerated or aggravated the process. Dr. Bowers replaced both implants, even though only one had ruptured, because the replacements would have to be symmetrical and evenly matched. Replacement of one implant required replacement of both.
11. The plaintiff sought treatment for her knee on July 9, 2001. She had undergone two knee surgeries prior to the accident of May 16, 2001. The plaintiff had been released from care and had returned to work following those knee surgeries with no restrictions. Following the accident, her knee began to swell, and she returned to the orthopedic surgeon who had performed her previous surgeries, Dr. Peter Dalldorf, complaining of right knee pain with throbbing and aching. Dr. Dalldorf found some swelling and tenderness and referred her to physical therapy. He also saw the plaintiff on July 30, 2001, when she complained of "intense pain since her accident" in her knee. Dr. Dalldorf restricted the plaintiff from working from July 9 until August 6, 2001.
12. The Full Commission finds that the plaintiff was restricted from work by her physicians from May 16, 2001, the day of her accident, until August 6, 2001. She worked a few days between May 20 and May 24, 2001, for which she received pay, although she had been restricted from work. The plaintiff also worked two half-days in July 2001, but was not paid for those days. Her wages were used to pay her health insurance premiums.
13. The plaintiff returned to work on a regular basis on August 7, 2001, but stopped working again on October 6, 2001, to have surgery to her right knee by Dr. Dalldorf on October 7, 2001. Nationwide Insurance paid for the plaintiff's knee surgery pursuant to plaintiff's claim with Nationwide.
14. The plaintiff did not return to Dr. Dalldorf until May 2002. Between her surgery in October 2001 and May 2002, Plaintiff worked a total of eight days, performing occasional light-duty jobs for the defendant-employer as they became available. Dr. Dalldorf stated that in order for the plaintiff to perform her job as a CNA during this time, she would have been prohibited from lifting, positioning and turning patients, and she would be restricted in crawling, climbing and stooping. The defendant-employer used the plaintiff's wages on those days to pay her health insurance premiums.
15. The Full Commission finds that the plaintiff's ability to occasionally perform brief, sporadic, light-duty work in order to maintain her health insurance between October 2001 and June 2002 does not impair her right to continuing compensation, as it does not constitute a successful trial return to work.
16. The plaintiff testified that she contacted her employer regularly between October 2001 and May 2002, and notified them of her status. She testified that she requested to be assigned jobs so that she could work. The plaintiff further testified that the defendant-employer rarely offered her modified work that she could perform based on her restrictions.
17. Steve Taylor, accounts manager for the defendant-employer, testified that the plaintiff had been offered opportunities for light-duty work. He did not know the dates of these offers or the nature of the jobs offered. Mr. Taylor's testimony regarding offers of modified duty to the plaintiff is found to be not credible because he had no personal knowledge of any modified job offers made to the plaintiff. Mr. Taylor admitted that the defendant-employer did not keep records of any such offers, and the defendants produced no such records at the hearing before the Deputy Commissioner.
18. Mr. Taylor also testified that the defendant-employer's employees were "temporary" employees. His testimony that the plaintiff and defendant-employer's other employees were "temporary" was contradicted by Plaintiff's Exhibit 5, a letter dated May 21, 2001, by David Popp, a former Operations Manager with defendant-employer. Mr. Popp's letter indicates that the plaintiff "works regular homecare cases 47 hours a week," and that she has worked for the defendant-employer since May of 1996. Thus, the Full Commission finds that while plaintiff's assignments to particular patients may be characterized as "temporary" and "as-needed," her work with the defendant-employer was regular and full-time.
19. Dr. Dalldorf performed a second post-accident knee surgery on June 25, 2002. Since June 25, 2002, the plaintiff has not worked, and has been under restrictions from her medical doctors. Plaintiff underwent her third post-accident knee surgery, a Fulkerson slide procedure in October 2002. Dr. Dalldorf testified that while the plaintiff had a pre-existing condition to her knee, which was chondromalacia patella, she would not have needed the subsequent surgeries but for her work-related accident. The accident aggravated the pre-existing condition and caused her to need additional surgeries. Thus, the Full Commission finds that the plaintiff's treatment and surgeries for her right knee were caused by the accident.
20. According to Dr. Dalldorf, the plaintiff would have had trouble doing her regular job from June 2002 until February 2003. There is no credible evidence in the record that from June 25, 2002, to February 2003 the defendant-employer offered the plaintiff any modified duty within her restrictions from her knee surgery.
21. In March 2003, the plaintiff began to receive treatment from Dr. Gary Kuzma for carpal tunnel syndrome and arthrosis of her right thumb joints. The plaintiff had previously undergone an EMG and nerve conduction study by Dr. Marshall Freeman in January 2003, and had been prescribed a brace and injections for her condition by Dr. Peter Dalldorf, who was treating her right knee. The plaintiff's test results indicated carpal tunnel syndrome, and Dr. Dalldorf referred her to Dr Kuzma in March 2003. Dr. Kuzma diagnosed carpal tunnel syndrome and arthrosis of the right thumb, and placed the plaintiff's right hand in a splint. He restricted her to one-handed work only, effective March 6, 2003. Dr. Kuzma performed a right carpal tunnel release on June 4, 2003. He testified at deposition in January 2004 that she would still be under his care, and on one-handed work restrictions, and would probably need at least one more surgery in the future for instability in the joints of her thumb. Dr. Kuzma gave the plaintiff a five-percent (5%) impairment rating for her right carpal tunnel syndrome. He had not released the plaintiff from his care for carpal tunnel syndrome at the time of his deposition because he was still treating her for her thumb problem.
22. The Full Commission finds that the plaintiff's treatment and surgery for her carpal tunnel syndrome and right thumb arthrosis was caused by the May 16, 2001, accident. Dr. Kuzma testified that the motor vehicle accident either caused the plaintiff to develop these conditions or aggravated them if they were pre-existing. Dr. Peter Dalldorf testified that he did not believe the plaintiff's carpal tunnel syndrome was related to her accident, but his opinion is given less weight, because he did not formally treat the plaintiff for that condition, and referred her to Dr. Kuzma instead. In addition, Dr. Dalldorf did not know Dr. Kuzma's diagnoses or opinions regarding causation at the time Dr. Dalldorf testified.
23. The plaintiff has also sought treatment for cervicogenic headaches that began at the time of the accident. Her headaches have been daily and continuous. The plaintiff sought treatment from Dr. Marshall Freeman at the Headache Wellness Center beginning in October 2002. Dr. Freeman prescribed multiple forms of treatment, including medications, injections, and nerve blocks, but the plaintiff did not experience significant improvement in her headaches.
Dr. Freeman indicated that the plaintiff could continue doing biofeedback at home, or he would consider such future treatments as different medication choices, additional trigger point injections, botulinum-toxin injections, or integrative therapies. The plaintiff had not followed up with integrative therapies because it is not typically covered by insurance. She was still under Dr. Freeman's care at the time of the hearing before the Deputy Commissioner. Dr. Freeman testified that the plaintiff suffered her headaches as a consequence of the accident. Thus, the Full Commission finds that the plaintiff's treatment for headaches was required by the May 16, 2001, accident.
24. The plaintiff also suffered injuries to her teeth in connection with her motor vehicle accident of May 16, 2001. She has undergone root canal therapies on several upper and lower teeth on the left side of her mouth. The plaintiff has received treatment for teeth numbers 12, 13, 14, 15, 19, 23 and 24. She had multiple root canals on some of these teeth. Plaintiff also had to have dental work and crowns on the teeth that underwent root canal therapy. She has not had any dental work after the accident on the right side of her mouth. The impact to the plaintiff's face in the accident was on the left side. However, the repair work to tooth #19 was not due to the accident, but to a previous inadequate root canal.
25. Plaintiff has also been diagnosed with fibromyalgia by Dr. Deveshwar at Sports Medicine and Orthopedic Center. She was not diagnosed with fibromyalgia until at least July 2002, almost a year after the accident. The plaintiff testified at the hearing before the Deputy Commissioner that she was not sure whether she had fibromyalgia or not, because she had received differing opinions from her doctors. The plaintiff does not allege that her fibromyalgia, if she has it, is related to her motor vehicle accident. While Dr. Deveshwar has indicated as of January 8, 2003, that the plaintiff is permanent and totally disabled from her fibromyalgia symptoms, these symptoms are distinguishable from the plaintiff's work-related injuries. None of the plaintiff's treating physicians testified that plaintiff's fibromyalgia has more likely than not caused, aggravated, or accelerated the problems the plaintiff experienced from the work-related accident. Any disability resulting from her fibromyalgia has run concurrently with disability from other medical conditions relating to her accident. Thus, the Full Commission finds that the plaintiff's fibromyalgia has not been an intervening or superceding cause for her disability.
26. The plaintiff's CNA license expired January 12, 2004. The defendant-employer was responsible for renewing her CNA license. The defendant-employer renewed the plaintiff's license through January 12, 2004. Upon the expiration of her CNA license, she would not be able to perform CNA duties until she has successfully completed nurse aide training and the competency program.
27. Defendants had no reasonable basis upon which to deny the plaintiff's claim. The defendants also failed to admit or deny the plaintiff's claim for injuries that she sustained in the May 16, 2001, accident in that they had actual notice of her injury by accident within 30 minutes of the time of the accident and have known about the medical treatment plaintiff has received as it was performed.
28. The plaintiff notified the defendant-employer about her accident on May 16, 2001, within thirty minutes. Her notice was timely. She gave written notice, by filing a Form 18 in June 2002. In light of the defendants' actual notice of the plaintiff's accident in May 2001, the defendants were not prejudiced by her failure to immediately file a written notice.
29. The defendants have not denied this claim within the prescribed time period as set forth in N.C. Gen. Stat. § 97-18, despite their actual notice. Thus, the Full Commission finds the amount of $250.00 to be a reasonable sanction for the defendants' failure to comply with the filing requirements of N.C. Gen. Stat. § 97-18.
30. The plaintiff filed a claim against Nationwide Insurance, the carrier of the uninsured motorist coverage on the vehicle she was driving at the time of the accident. Thus, the Full Commission finds that the settled claim filed by the plaintiff against Nationwide is, in fact, a third-party claim.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. The plaintiff sustained an injury by accident arising out of and in the course and scope of her employment with defendant-employer on May 16, 2001. N.C. Gen. Stat. § 97-2(6). As a consequence of this accident, the plaintiff sustained compensable injuries to her right knee, bilateral breast implants, her right thumb/wrist/hand, her teeth, and her head.Id.
2. The plaintiff is entitled to receive temporary total disability compensation at the weekly rate of $266.01 from May 17, 2001, to August 6, 2001, and from October 7, 2001, and continuing until further order of the Commission.
3. The plaintiff is entitled to have defendants provide all medical compensation arising from this injury by accident, including the treatment by Dr. Peter Dalldorf, Dr. David Bowers, Dr. Marshall Freeman, Dr. Gary Kuzma, Dr. Dennis Torney and various dentists as reasonably necessary to effect a cure, give relief, or lessen the period of disability. N.C. Gen. Stat. §§97-2(19) and 97-25.
4. The defendants are entitled to a credit for any wages paid to the plaintiff during the periods in which she has been found to be temporarily totally disabled as provided herein. N.C. Gen. Stat. § 97-42.
5. Plaintiff's settled claim against Nationwide Insurance is a third-party claim and, thus, N.C. Gen. Stat. § 97-10.2 applies to provide the defendants a statutory lien. N.C. Gen. Stat. §97-10.2(j) provides in pertinent part:
 [I]n the event that a settlement has been agreed upon by the employee and the third party, either party may apply to the resident superior court judge of the county in which the cause of action arose, where the injured employee resides or the presiding judge before whom the cause of action is pending, to determine the subrogation amount.
Thus, the defendants may be entitled to a credit for plaintiff's third party recovery pursuant to N.C. Gen. Stat. § 97-10.2(j).
6. N.C. Industrial Commission Rule 802 (2) provides that failure to comply with any Rules of the Commission, which includes the timely filing of forms, may subject the violator to any sanctions outlined in Rule 37 of the N.C. Rules of Civil Procedure. Thus, defendants shall be sanctioned in the amount of $250.00 for failing to comply with the filing requirements of N.C. Gen. Stat. § 97-18.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. The defendants shall pay to the plaintiff temporary total disability compensation at the weekly rate of $266.01 from May 17, 2001, to August 6, 2001, and from October 7, 2001, and continuing until further order of the Commission, subject to the attorney's fee and credits provided herein. The portion of this amount that has accrued shall be paid to the plaintiff in lump sum.
2. The defendants shall pay for all medical expenses incurred or to be incurred by plaintiff as a result of her compensable injury when bills for same have been submitted to and approved by the Industrial Commission, for so long as such evaluations, treatments, and examinations may reasonably be required to effect a cure, give relief, or lessen the plaintiff's period of disability.
3. The defendants shall pay to plaintiff's counsel a reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded to plaintiff, subject to the credits awarded herein. The portion of this fee based upon compensation that has accrued shall be paid to plaintiff's counsel in lump sum; thereafter, plaintiff's counsel shall receive every fourth compensation check due plaintiff.
4. The defendants shall receive a credit for any wages paid to plaintiff during the periods in which she has been found to be temporarily totally disabled as awarded herein.
5. The defendants shall be entitled to a credit, if any, as duly awarded by a superior court pursuant to N.C. Gen. Stat. §97-10.2.
6. The defendants are hereby sanctioned in the amount of $250.00 for failure to comply with the filing requirements of N.C. Gen. Stat. § 97-18, pursuant to N.C. Industrial Commission Rule 802, and Rule 37 of the N.C. Rules of Civil Procedure. This sanction shall be taxed as costs to the defendants.
7. The defendants shall pay the costs of this action.
This 12th day of September 2005.
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
 S/______________ BUCK LATTIMORE CHAIRMAN